UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NEAL M. CATLIN, 04-B-2181,                    **DECISION AND ORDER**

                    Petitioner,               Case No.: 07-CV-0641(M)

            v.

SUPERINTENDENT S. KHAHAIFA,

                    Respondent.

_____

            Petitioner Neal Catlin, an inmate acting *pro se*, filed a petition under 28 U.S.C.

§2254 for a writ of habeas corpus on March 13, 2007 [1].[1]  The parties have consented to

proceed before a Magistrate Judge pursuant to 28 U.S.C. §636(c) [11].  For the following

reasons, I order that the petition be DENIED.


                    **BACKGROUND**

            Petitioner was charged in an indictment (No. 2004-0157) with burglary in the

second degree (N.Y. Penal Law §140.25).  Arraignment, March 17, 2004. Following a two-day

bench trial in Monroe County Court (Hon. Frank P. Geraci, Jr.) on July 14 and 15, 2004,

petitioner was convicted of burglary in the second degree.

            The pertinent facts are as follows. Bruce Conover resided at 4281 Lyell Road in

Rochester, New York (T20)[2].  On December 31, 2003, Mr. Conover left for work about 1:30

p.m. and observed an unfamiliar vehicle pulling out of his driveway (T35, 36).  Because his

_____

[1]         Bracketed references are to CM/ECF docket entries.

[2]         "T" references the trial transcript.

-1-

driveway was approximately 370 feet long and the vehicle had proceeded 300 feet down the

driveway, he became suspicious (T37). Therefore, he drove around to the rear of the house,

where he observed the same vehicle drive down his driveway and back up to his house (T43).

After he observed two people exit the vehicle, he called 911 and returned to his driveway, where

he waited for the police (T44, 45).

The police surrounded the house and ordered Tracy Schwalm (a prostitute whom

Conover had previously frequented) and petitioner to come out of the house (T21, 22, 48, 133-

135). When Mr. Conover re-entered his house, he found that the door to the house was "busted"

and his wife's jewelry box, along with some of his coin collection, were near the door (T51,

137). Mr. Conover's wife also testified that her jewelry box was not found in her bedroom,

where it had been prior to the incident (T198). Sergeant Salvatore Gerbino testified that,

following her arrest, Ms. Schwalm stated that she had taken some jewelry, but had dumped it by

the door when she observed the police (T292).

Ms. Schwalm, who had pled guilty to attempted burglary in the fourth degree for

the December 31, 2003 incident, testified on behalf of petitioner (T223-24). She stated that she

had had sex with Conover at his home on the morning of December 31, 2003 (T232-34), and that

Conover's home was "filthy" (T234). She further testified that because Conover only had $20 of

the $60 he had agreed to pay her in exchange for sex, he advised her to come back in the

afternoon (T237). She returned later in the day with petitioner, her boyfriend (T239-41). At that

time, petitioner indicated that he would be right back (T242-44).

According to Ms. Schwalm, she and petitioner smoked crack in their vehicle

while waiting for Conover to return (T247). When Conover failed to return, Schwalm attempted

to enter the house, as she had on prior occasions, but found that the door was locked (T247).

Believing that Conover was "jerking [her] around", she kicked in the door and went inside to

look for the money he owed her (T248-49). According to Schwalm, petitioner entered the house

a few minutes later to see what was happening, and she told him to wait outside (T249-50).

However, by that time, they observed the police. Id.

The court found petitioner guilty of burglary in the second degree. July 19, 2004

proceeding.   Petitioner was sentenced as a second violent felony offender to seven years of

incarceration. August 6, 2004 Sentencing.

On appeal, petitioner argued that Schwalm was impermissibly questioned about

petitioner's involvement in an unrelated arrest, and that the verdict was against the weight of the

evidence. Appendix B and D.    The Appellate Division, Fourth Department, affirmed

petitioner's conviction (People v. Catlin, 41 A.D.3d 1199 (4th Dept. 2007)), and leave to appeal

to the Court of Appeals was denied. 9 N.Y.3d 873 (2007).


**The Habeas Corpus Petition**

Petitioner advances two arguments in seeking a writ of habeas corpus: first, that

the verdict was against the weight of the evidence, and second, that the court improperly

permitted the prosecutor to question Ms. Schwalm concerning an unrelated arrest.  Petition [1].

## ANALYSIS

### A.      Exhaustion and Procedural Default

A petitioner must exhaust all available state remedies - either on direct appeal or through a collateral attack on his conviction - before he may seek habeas relief in federal court. 28 U.S.C. §2254(b); <u>Bossett v. Walker</u>, 41 F. 3d 825, 828 (2d Cir. 1994), <u>cert</u>. <u>denied</u>, 514 U.S. 1054 (1995). To exhaust state remedies, "the petitioner must apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." <u>Galdemez v. Keane</u>, 394 F. 3d 68, 73 (2d Cir. 2005), <u>cert</u>. <u>denied</u>, 544 U.S. 1025 (2005).

"When a claim has never been presented to a state court, a federal court may theoretically find that there is an absence of available State corrective process under §2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state form would be futile." <u>Aparicio v. Artuz</u>, 269 F. 3d 78, 90 (2d Cir. 2001). "This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted." <u>Id</u>.

Significantly, the "dismissal of a habeas claim on the ground that it was procedurally defaulted differs crucially from a dismissal for failure to exhaust state remedies. Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits."

Id.  Nevertheless, a claim can avoid procedural default if the petitioner shows "cause for the

default and prejudice, or demonstrates that failure to consider the claim will result in a

miscarriage of justice (i.e., the petitioner is actually innocent)". Id.

Furthermore, the Anti-Terrorism and Effective Death Penalty act of 1996

("AEDPA") "permits a habeas court to reject a claim on the merits notwithstanding the fact that

it is unexhausted. 28 U.S.C. §2254(b)(2).  However, there exists no complementary power to

grant a habeas petition on an unexhausted claim". Id. at 91 n. 5.

**B.       Standard of Review**

A habeas corpus petition may not be granted with respect to any claim that was

adjudicated on the merits in state court unless the state court's adjudication of that claim:

> "(1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding." 28 U.S.C. §2254(d).

"A determination of a factual issue made by a State court shall be presumed to be

correct", unless the petitioner rebuts this presumption by "clear and convincing evidence". 28

U.S.C. §2254(e)(1).

## C.     Weight of the Evidence

Respondent argues that weight of the evidence claims are not cognizable on habeas review, and that even accepting petitioner's argument as challenging the sufficiency of the evidence, it fails on the merits. Respondent's Memorandum of Law [8], Point A. I agree.

"Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding." Urruita v. Greene, 2007 WL 2484305, *3 (W.D.N.Y. 2007) (Siragusa, J.). Mindful that "complaints of *pro se* petitioners are to be considered liberally in their favor", even construing the claim as an insufficiency of the evidence claim, it does not provide a basis for habeas relief. Id., *4.

"In a challenge to a state criminal conviction brought under 28 U.S.C. §2254 - if the settled procedural prerequisites for such a claim have otherwise been satisfied - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). "This inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'. . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the

trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." Id. at 318-19.

N.Y. Penal Law §140.25 states that "a person is guilty of burglary in the second

degree when he knowingly enters or remains unlawfully in a building with intent to commit a

crime therein". Petitioner argues that "co-defendant testified that I did not enter this dwelling

with an intent to commit a crime. She did! The home owner testified that jewelry boxes were

placed by the door, preped [sic] for theft. He took pictures of this. the Tech. Officer's pictures

did NOT have these jewelry boxes by the door and he said if they were there he would have

taken into evidence." Petition [1], Ground One (emphasis in original).

However, Judge Geraci was free to credit (or discredit) the testimony that was

presented. See Maldonado v. Scully, 86 F. 3d 32, 35 (2d Cir.1996) ("Assessments of the weight

of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on

[habeas] appeal."). If he credited Mr. Conover's testimony that petitioner and Ms. Schwalm did

not have permission to be in his home and that his wife's jewelry box was found moved from the

bedroom following the incident, and discredited Ms. Schwalm's testimony that petitioner had no

part in her efforts to burglarize the home, there was sufficient evidence to support petitioner's

conviction. His failure to credit Ms. Schwalm's testimony would not be surprising, given her

statement that she did not recall certain events on the day of incident because she was on a

"seven-day smoking binge" and "was incoherent". T, 272.

Petitioner also relies on the fact that a police technician had photographed the

location of the jewelry box, but these photographs were not entirely consistent with the location

of the jewelry box as depicted in photographs taken by Conover's wife later in the day. T, 181,

193. Even assuming that this evidence weighs against the Conovers' credibility, it remained

within the court's purview to determine what weight to give to their testimony.

Therefore, I find that the evidence is not legally insufficient to support

petitioner's conviction, and deny this aspect of the petition.


**D.      The Propriety of Questioning Ms. Schwalm Concerning Petitioner's Involvement in an Unrelated Crime**

Petitioner argues that "[t]he Judge allowed the prosecutor to ask my co-defendant

if I was w/her on unrelated charge.  The prosecutor asked co-defendant if I was w/her when she

was arrested on an unrelated charge. We objected.  The judge overruled and let her answer yes I

was w/her that day." Petition [1], Ground Two.  Respondent argues that the court's evidentiary

ruling does not implicate the federal constitution.  Respondent's Memorandum of Law [8], p. 6.

During the prosecutor's cross-examination of Ms. Schwalm, the following

exchange occurred:

"Q.  Tracy, I would like to direct your attention back to August 11, 2003.  On that evening, were

you at a house located in Chili - - I am sorry, in Gates, 329 Crestwood?  Do you recall being

there that night?

A.  Uhm, I recall somewhat of being there that night.  I was intoxicated.

Q.  All right. Did you get arrested that night?

A.  Yes.

Q. By the Gates Police?

A. Yes.

Q.  All right. Who else was with you that night?

Mr. Davis:  Objection, Judge.

The Court:  Overruled.

A.  I was by myself.

Q.  Oh, you were alone that night?

A. Yeah.

Q.  There was no other person with you?

A.  Uhm, not at that moment, no.  Not at the moment that the police pulled up to me, no." T, 260-261.

"Q.  On August 11, 2003, you didn't have permission to be in that other house in Gates, did you, that night?

A.  No.

Q.  Okay. Yet you were actually in the man's kitchen; were you not?

A.  That's what they say.

. . .

Q.  Who was right outside his door when that happened?

Mr. Davis: Objection, Judge.

The Court: Overruled.

A.  Nobody.

Q. Oh, there was nobody outside that door?

A.  Nobody.

Q. Did you later see Neal Catlin that night?

A.  Down the road.

Q. Oh, he was down the road?

A. Yes.

Q. What was he doing there?

     Mr. Davis: Objection, Judge.

A. He was walking.

Q. Was this a coincidence? You didn't know he was there?

A. No. We were fighting.

Q. Oh, you were fighting?

A. Uh-huh.

Q. I thought you said you didn't remember what you did that night?

A. I remember arguing with him.

Q. How did you end up in this person's house?

A. I have no clue.

Q. Your testimony would be that Neal didn't know that you went into that house?

     Mr. Davis: Objection, Judge. She can't testify what someone knows or someone doesn't know.

     The Court: Sustained.

Q. Did Neal know if you went into the house?

     Mr. Davis: Objection, Judge.

     The Court: Overruled.

A. I have no idea." (T278-80).

     The Appellate Division rejected this aspect of petitioner's appeal, finding that

"the record establishes that the witness testified that no one else was involved in the incident,

and the prosecutor did not ask her whether defendant was arrested or charged in connection with that incident. In any event, we conclude that any error in that respect is harmless." People v. Catlin, 41 A.D.3d 1199, 1200 (4th Dept. 2007).

"Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law do not present constitutional issues cognizable under federal habeas review. . . . Therefore, unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in this context. . . . Such unfairness will only result where: '[T]he erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, [and] highly significant.'" McKinnon v. Superintendent, Great Meadow Correctional Facility, 2009 WL 3863354, **2 -3 (2d Cir. 2009) (Summary Order).

I do not find that the admission of this testimony, even if erroneous, rises to constitutional dimensions, as its admission did not affect the fundamental fairness of the proceedings. As noted by the Appellate Division, Ms. Schwalm was never asked whether defendant was arrested or charged in connection with the incident, and her testimony also indicated that she acted alone. Moreover, as discussed earlier, there was otherwise sufficient evidence to find petitioner guilty of second degree burglary. Therefore, this aspect of the petition is denied.

**E.      Certificate of Appealability**

In order for a Certificate of Appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  To make that showing,  the petitioner must establish that "reasonable jurists could debate     whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Rhagi v. Artuz</u>, 309     F. 3d 103, 106 (2d Cir. 2002) (per curiam), <u>cert</u>. <u>denied</u>, 538 U.S. 950 (2003). Petitioner has made no such substantial showing of the denial of a constitutional right in this case.

## CONCLUSION

For these reasons, it is hereby ORDERED, that the petitioner's motion for a writ of habeas corpus under 28 U.S.C. §2254 is DENIED.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I also order that a Certificate of Appealability not be issued.

**SO ORDERED**.

DATED:       February 22, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
